IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOHNATHAN HUNT | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv272 (consolidated with C.A. No. 6:20cv316) |
| MANAGEMENT TRAINING CORPORATION, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Johnathan Hunt, a parolee previously confined in the East Texas Treatment Facility, a.k.a., the East Texas Intermediate Sanctions Facility (ISF),[1] in Henderson, Texas, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The lawsuit was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**Procedural History**

Initially, Plaintiff filed two lawsuits in the Southern District of Texas–Houston Division —Cause Nos. 4:20-cv-1708 and 4:20-cv-1113. In Cause No. 4:20-cv-1708, the Southern District dismissed certain claims and transferred the remainder of Plaintiff's original complaint to the Eastern District of Texas. (Dkt. #3). Southern District Cause No. 4:20-cv-1708 became Cause No. 6:20-cv-272 in the Eastern District of Texas.

---

[1] An Intermediate Sanctions Facility is a facility that provides treatment to parolees who are in violation of their parole requirements, *e.g.*, failing required drug testing, in lieu of the parolee being returned to the Correctional Institutions Division of the Texas Department of Criminal Justice to complete the remainder of their sentence(s).

In Cause No. 4:20-cv-1113, the Southern District transferred Plaintiff's claims to the Eastern District of Texas after Plaintiff filed an Amended Complaint (Dkt. #7). (6:20cv316, Dkt. #14). Southern District Cause No. 4:20-cv-1113 became Cause No. 6:20-cv-316 in the Eastern District of Texas.

After receipt and review of Plaintiff's two lawsuits, the Court consolidated Cause Nos. 6:20-cv-272 and 6:20-cv-316 into one lawsuit in Cause No. 6:20-cv-272. (6:20-cv-272, Dkt. #18; 6:20-cv-316, Dkt. #29). On July 6, 2020, Plaintiff filed an Amended Complaint regarding his claims found in 6:20-cv-272. (Dkt. #13). On December 7, 2020, Plaintiff filed a Second Amended Complaint regarding his claims found in Cause No. 6:20-cv-316. (Dkt. #19). An amended complaint entirely supersedes and takes the place of an original complaint. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986). As a result, the amended complaints (Dkt. ##13 and 19) will be the governing complaints in this case. The amended complaints contain numerous very broad and vague claims. The Court will consider each claim *seriatim*.

## Plaintiff's Claims

In his consolidated amended complaints (Dkt. ##13 and 19), Plaintiff alleges a denial of his constitutional rights under the First, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Plaintiff sues Defendants the Management Training Corporation (MTC), ISF Supervisor Unknown Whitely, Disciplinary Captain Unknown Reed,[2] ISF Warden Unknown Rupert, former Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID) Director Lorie Davis, and Captain Reed Henderson in their

---

[2] The Court presumes that Captain Unknown Reed and Captain Reed Henderson are the same person based on the facts alleged in the operative amended complaints (Dkt. ##13 and 19).

individual and official capacities. He brings a recognizable First Amendment access to courts claim, a challenge to the calculation of his time served, a Fourteenth Amendment denial of due process claim regarding a disciplinary proceeding and placement in administrative segregation, and an Eighth Amendment deliberate indifference claim.

Plaintiff is seeking $500,000 in compensatory damages from each defendant, $6,000,000 in punitive damages from each defendant, and court costs. (Dkt. 19, p. 8). He is also seeking injunctive relief in the form of establishing a fully functional library at the East Texas ISF.

### Preliminary Screening.

Plaintiff is a former prisoner in the East Texas ISF who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under section 1915(e)(2). Both section 1915(e)(2)(B) and section 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard, a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke*, 490 U.S. at 327; *McCormick v. Stadler*, 105 F.3d 1059, 1061 (5th Cir. 1997).

Plaintiff has been allowed to plead his best case. *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Once "a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Id*. at 792. (explaining that "plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold.").

**Discussion and Analysis.**

I.   **Money damages against the Defendants in their official capacities**

Plaintiff sues Defendants for prospective injunctive relief, which is a claim brought against the Defendants in their official capacities. He seeks relief also in the form of monetary damages;

4

however, he does not specify whether he is suing Defendants in their official capacities for money damages. To the extent Plaintiff is seeking money damages from Defendants in their official capacities, that claim should be dismissed.

When a plaintiff files suit against state officials in their official capacities, in effect, he is bringing suit directly against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011), *cert. denied*, 565 U.S. 1079 (2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself")). Since the State has not consented to suit, in as far as Plaintiff filed suit against Defendants for monetary relief in their official capacities, Defendants are shielded from this claim via the Eleventh Amendment. *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996)). The Court recommends any claim seeking money damages from Defendants in their official capacities should be dismissed, without prejudice, for lack of subject matter jurisdiction. *See Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) (holding that claims barred by the invocation of sovereign immunity "can be dismissed only under Rule 12(b)(1) and not with prejudice.").

**II.     Plaintiff's factual allegations must state a claim upon which relief may be granted.**

   A.  <u>Fifth Amendment Claim</u>

Plaintiff alleges Defendants violated his procedural due process rights pursuant to the Fifth Amendment. (Dkt. #19, pp. 6, 8). His procedural due process rights claim under the Fifth Amendment fails because he is suing only state actors—the individual defendants are either employees of the Correctional Institutions Division of the TDCJ or the MTC. The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal

actor. *Jones v. City of Jackson,* 203 F.3d 875, 880 (5th Cir. 2000) (citing *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) (holding that the Fifth Amendment applies only to the actions of the federal government)). Plaintiff has not alleged that any individual defendant was acting under the authority of the federal government. Because the Fifth Amendment does not apply to state actors, Plaintiff has failed to state a viable constitutional violation and lacks an arguable basis in law. His Fifth Amendment claim should be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B).

    B. <u>Sixth and Thirteenth Amendment Claims</u>

Plaintiff asserts that he is suing Defendant Ms. Whitely under the Sixth and Thirteenth Amendments. (Dkt. #19, p. 6). He states: "Ms. Whitely is guilty of deliberate indifference, false imprisonment, and cruel and unusual punishment in violation of due process, [and] equal protection of the law (5th, 6th, 8th, 13th, and 14th Amendments)." (*Id.*) Plaintiff fails to state any facts or cognizable theory to support any purported violation of either the Sixth Amendment—guaranteeing a panoply of rights to an accused person—or the Thirteenth Amendment—prohibiting slavery and involuntary servitude.

A *pro se* plaintiff must allege more than "labels and conclusions" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Plaintiff's factual allegations must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke*, 490 U.S. at 327; *McCormick*, 105 F.3d at 1061. Here, Plaintiff asserts conclusions without any facts to show that he is entitled relief under a valid legal theory. His claims pursuant to the

Sixth and Thirteenth Amendments should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B).

C. <u>Denial of Access to an Adequate Law Library</u>

Plaintiff argues that he has been denied his First Amendment right of access to courts because of an inadequate law library at the ISF. He sues the MTC for having an inadequate law library. Plaintiff states that he had two active cases at the time he entered the ISF. He contends that he needed access to a full law library and that he should have been allowed to attend the law library every day for two hours sessions each time. He further alleges that the ISF law library does not contain any legal resources; *e.g.*, federal or state codes, or a legal dictionary. (Dkt. #19 at 7).

Prisoners have a constitutional right to access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Dickinson v. TX, Fort Bend Cnty.*, 325 F. App'x 389, 390 (5th Cir. 2009). This is not, however, an abstract, free-standing right to a law library or to legal assistance; rather, it is a right to "meaningful access." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). A prison need not provide its inmates with a library that results in the best possible access to the courts but must provide a library or other assistance that meets minimum constitutional standards of providing access to the courts. *See Bounds*, 430 U.S. at 829.

A prisoner's law library right is not without limitations. "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Vaccaro v. United States*, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); *accord Manning v. Sumlin*, 540 F.

App'x 462, 463 (5th Cir. 2013) (citing *Lewis*, 518 U.S. at 356); *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993).

Before a prisoner may prevail on a claim that his constitutional right of access to courts was violated, he must demonstrate that his position as a litigant was prejudiced by the denial of access. *McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998). To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis*, 518 U.S. at 356; *see also Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a claim of denial of access to the courts, a plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Christopher v. Harbury*, 536 U.S. 403, 417-18 (2002).

The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

With respect to the alleged inability to access a library or a claim that a library was deficient, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical

requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* The "inmate must show that a nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or that the deficiency is currently preventing his presentation of such a claim." *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017).

In his amended complaint, Plaintiff references a state application for writ of habeas corpus pursuant to Article 11.07, TEX. CRIM. PROC. CODE, and a federal habeas petition. He fails to provide the specificity or detail in his amended complaints as required in *Christopher*, 536 U.S. 417-18. Plaintiff does not allege that either the Art. 11.07 state application for writ of habeas corpus or the federal habeas petition was dismissed for failure to satisfy some technical requirement because of deficiencies in the ISF law library. He does not allege, for instance, that the inadequate law library prevented him from filing, or caused him to lose, either of his habeas corpus petitions. Similarly, he does not explain how access to a more adequate law library would have aided him, "or how [his] claims would have been meritorious." *See Hopkins v. Ogg*, 2019 WL 3761360, at *3 (5th Cir. Aug. 8, 2019). Plaintiff has not made a showing of prejudice; accordingly, he fails to allege facts establishing a viable access to courts claim. The First Amendment access to courts claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B).

D. Calculation of Time Credits Claim

Plaintiff asserts that he was sentenced to twenty-five years' confinement in TDCJ over 31 years ago. (Dkt. #13 at 4). He contends that his sentence should have been terminated in 2014. He claims that he has a time sheet proving that he had served over 100% of his sentence and should have been released to mandatory supervision. He further states that there is also an issue regarding the calculation of his work and good time credits. (*Id*).

Plaintiff's time credit allegations against Defendants are not cognizable in an action under Section 1983. Those claims derive from his assertion that his parole was improperly revoked, and time was added to his sentence, and challenge the very fact and duration of his physical imprisonment. His sole remedy as to those allegations is a writ of habeas corpus. *Preiser v. Rodriguez,* 411 U.S. 475, 500, (1973); *see also Sanders v. Smith,* 111 F. App'x 752, 752–53 (5th Cir. 2004) (complaint regarding revocation of parole should have been brought in habeas); *Black v. Leblanc,* 2009 WL 5083571, at *1 (W.D.La.2009) (complaint alleging that sentence was improperly calculated must be pursued through petition for habeas corpus).

Plaintiff asserts that he did file a federal habeas petition asserting these same time credit claims in the Southern District of Texas. Even if he could challenge the calculation of his time credits and sentence in his Section 1983 action, his claims are barred by *res judicata*. Plaintiff's claims were decided in *Hunt v. Lumpkin*, Cause No. 4:19-cv-4050, 2021 WL 4924760 (S.D. Tex. Oct. 21, 2021). His claims were reviewed on the merits and dismissed with prejudice. A certificate of appealability was denied. He did not appeal the court's determination. As such, Plaintiff's sentence calculation claims are barred by the doctrine of *res judicata* (claim preclusion).

The doctrine of *res judicata* states that a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the parties and their privies; therefore, attempts to litigate the matter further are barred. *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978). *Res judicata* bars a plaintiff from bringing a second suit based upon the same event or series of events by asserting additional facts *or proceeding under a different legal theory*; the doctrine prevents "litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979); *see also Goldberg v. R. J. Longo Constr. Co.*, 54 F.3d 243, 246 (5th Cir. 1995) (*res judicata* claims that were or could have been raised in prior actions).

The doctrine of *res judicata* bars Plaintiff from relitigating any claims arising out of his time calculation of his sentence and any suits arising out of those events against the TDCJ-CID Director. His claims against the TDCJ-CID Director (Davis or Lumpkin) will be dismissed as frivolous. Plaintiff's challenge to his time credits accrual should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B).

E. Disciplinary Case for Refusing Treatment

Plaintiff states that Defendant Whitely wrote multiple disciplinary cases against him for refusing to consent or attend substance abuse treatment as directed by the Texas Board of Pardons and Paroles. He contends that he has the right to refuse medical treatment and that he should not have been placed in administrative segregation without a hearing or proving that he is a threat. (Dkt. #13, p. 5).

He further contends that Captain Reed ran the disciplinary hearing against him for refusing treatment. He declares that he was denied the right to a substitute counsel. He states that Captain Reed found him guilty, and assessed 135 days of recreation restriction, 156 days of commissary restriction, and 131 days of visitation restriction. He asserts that Captain Reed knew or should have known that it is a violation to hold a disciplinary hearing once he was placed in Segregation Pre-Hearing Detention. (Dkt. #13, p. 5). He further complains that it was improper for Captain Reed to leave him housed in segregation because he was not given segregation as a punishment. Plaintiff has chosen the wrong forum in which to challenge his disciplinary case, punishment, and housing.

Plaintiff cannot assert a disciplinary due process claim in a 42 U.S.C. § 1983 action unless he first shows that the result of the disciplinary case was reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). As he is unable to show that his disciplinary conviction has been overturned, his Section 1983 claims here are barred.

"Claims for damages and declaratory relief challenging the procedures used in, but not the results of, prison disciplinary proceedings are similarly not cognizable in a Section 1983 action until the relevant 'conviction' has been reversed, expunged, or otherwise declared invalid if a favorable judgment would 'necessarily imply' the invalidity of the prisoner's 'conviction' in the disciplinary proceeding or the length of the prisoner's confinement." *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (*en banc*) (citing *Edwards*, 520 U.S. at 646). The Fifth Circuit has consistently upheld the application of *Edwards* regarding prison disciplinary cases. *See Taylor v. Gunnels*, 378 F. App'x 469, 470 (5th Cir. 2010); *Johnson v. Livingston*, 360 F. App'x 531, 532

12

(5th Cir. 2010); *Thomas v. Quarterman*, 339 F. App'x 364, 366 (5th Cir. 2009). Plaintiff has not shown that his disciplinary cases have been reversed, expunged, or otherwise declared invalid. He may not bring a civil rights proceeding in an effort to overturn the disciplinary cases.

Regarding his due process claim that he was not appointed a counsel substitute to assist him with his disciplinary proceeding, Plaintiff fails to state a claim. There is no constitutional right to counsel in prison disciplinary hearings, including a counsel substitute. *Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009) ("Although there is no constitutionally protected right to counsel substitute in a disciplinary proceeding, . . ."); *see Enriquez v. Mitchell*, 533 F.2d 275, 276 (5th Cir. 1976); *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982) (holding that when no right to counsel exists, one cannot be deprived of the effective assistance of counsel).

To the extent that Plaintiff is complaining about his confinement in solitary confinement allegedly without due process (Dkt. #13, pp. 5-6), he fails to state a claim. The Supreme Court placed severe limitations on challenges to disciplinary cases in *Sandin v. Conner*, 515 U.S. 472 (1995). The Court concluded that the federal judiciary had gone too far in extending due process rights. The Court retreated from its earlier conclusion that due process rights must be accorded to inmates before placing them in solitary confinement. *Id.* at 485. The Court held that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486. Plaintiff's placement in segregated housing does not trigger due process concerns. Plaintiff's Fourteenth Amendment procedural due process claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The Fourteenth Amendment procedural due process claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B).

F. <u>Supervisory claims against Director Davis and Warden Rupert</u>

In his amended complaint, Plaintiff sues former TDCJ-CID Director Davis and Warden Rupert. He asserts that former Director Davis is legally responsible for the overall operations of the Department and each institution under its jurisdiction, including contract facilities like the East Texas ISF. (Dkt. #19, p. 2).

Plaintiff also contends that Warden Rupert is legally responsible for the operation of the ISF and for the welfare of all inmates in that prison. (*Id.*). He further alleges that Warden Rupert "sanctioned, approved, and oversaw each and every aspect of the civil rights violations I suffered from the moment I got to this unit." (Dkt. #13, p. 6).

In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Defendants were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in section 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). More recently, the Supreme Court held that the term supervisory liability in the context of a section 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. The Court rejected an argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct. *Id*. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Plaintiff has not alleged facts showing that each Defendant was personally

involved in denying him his constitutional rights. Instead, he merely infers that they should have known of the various conditions of which he complains because they are supervisors. His claim is purely speculative and does not save it from dismissal. *Silva v. Moses*, 542 F. App'x 308, 310-11 (5th Cir. 2013).

Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation.'" *Thompkins,* 828 F.2d at 304 (quotations omitted). In order to establish a claim for governmental liability under section 1983, a plaintiff must allege and identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 694-95. Here, Plaintiff has not alleged facts that satisfy this standard. Instead, he essentially alleges that because they held supervisory roles, then *ipso facto* they must be liable. His attempt to establish Director Davis and Warden Rupert's liability through vicarious liability is unavailing. *See Birdwell v. Livingston*, 327 F. App'x 457, 459-60 (5th Cir. 2009) (no liability in the absence of personal knowledge on the part of officials).

Plaintiff has not pleaded factual allegations showing that either Davis or Rupert was personally involved in a constitutional violation, that wrongful conduct by either one was causally connected to a constitutional violation, or that they implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation. The mere fact that Davis is the former Correctional Institutions Division Director and Rupert is a Warden at the ISF does not give rise to section 1983 liability for the actions of subordinate officers. Plaintiff has failed to state a claim against either former Director Davis or Warden Rupert, in their respective individual

capacities. Plaintiff's claims against Defendants Davis and Rupert in their individual capacities are frivolous in that they lack any basis in law and fact. Plaintiff's claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B).

F.     Violation of Prison Rules

Plaintiff contends that Defendants Whitely, Captain Reed, and the MTC failed to comply with various rules promogulated by either the MTC or TDCJ-CID. A violation of prison policy or rules, standing alone, is not sufficient to demonstrate a constitutional violation. *See Jackson v. Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam). Plaintiff fails to allege any facts showing that a violation of a prison rule rises to level of a constitutional violation. To the extent Plaintiff alleges that Defendants violated a prison rule or policy, that allegation fails to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

G.   Deliberate Indifference–Conditions of Confinement Claim

Plaintiff asserts in his Amended Complaints (Dkt. ##13 and 19) that Defendants Warden Rupert and Ms. Whitely were deliberately indifferent to his situation. (Dkt. #13, pp. 3, 6; Dkt. #19, p. 6). As Plaintiff does not assert any facts which would identify a medical deliberate indifference claim or a failure to protect claim, the Court construes his claim as a conditions of confinement claim.

"To succeed on his conditions-of-confinement claim, [Plaintiff] must show that (1) his confinement, objectively speaking, resulted in a deprivation that was sufficiently serious; and (2) that prison officials acted with deliberate indifference." *See Haralson v. Campuzano*, 356 F. App'x 692, 696 (5th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Hernandez*

16

*v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). "[T]he deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measures of life's necessities." *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (internal quotation marks and citation omitted). "[E]xtreme deprivations are required" in order to meet the objective component of a conditions of confinement claim. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).

In order to satisfy the subjective component, the prisoner must establish that the defendants "acted with deliberate indifference to his conditions of confinement." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (footnote omitted). "To establish deliberate indifference, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Farmer*, 511 U.S. at 832. Plaintiff's laundry list of complaints fails to meet any of the requirements necessary to state a claim for conditions of confinement under the Eighth Amendment.

In addition to failing to allege any facts that show that any named defendant was personally involved in an alleged violation of his constitutional rights or that any defendant's actions satisfied the objective or subjective components of a deliberate indifference claim, Plaintiff's specific complaints about the lack of access to a full law library or being housed in administrative segregation at the ISF fail to rise to the level of a constitutional violation.

Plaintiff's Eighth Amendment conditions of confinement complaint fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.

Plaintiff's deliberate indifference claim as to his conditions of confinement should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B).

    H.  <u>Claims for Prospective Injunctive Relief</u>.

In his Amended Complaints, Plaintiff moves for prospective injunctive relief for the Defendants to provide a fully functionally, up-to-date law library at the ISF. (Dkt. #13, p. 7; Dkt. #19, p. 8). On August 19, 2021, Plaintiff notified the Court that he was released from confinement and was living in a private residence. (Dkt. #20).

Plaintiff's request for prospective injunctive relief for a fully functional, up-to-date law library at the ISF became moot upon his release. *Cooper v. Sheriff, Lubbock Cnty., Texas*, 929 F.2d 1078, 1084 (5th Cir. 1991). The Fifth Circuit reiterated that a prisoner's transfer from a prison unit rendered his claim for injunctive relief against the defendants at that unit moot. *Vincent v. Stevenson*, 106 F.3d 397, 1997 WL 33444 (5th Cir. 1997) (unpublished table decision); *see also, Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). The Court recommends that Plaintiff's claim for prospective injunctive relief be dismissed as moot.

## IV.  Conclusion

In conclusion, Plaintiff's amended complaints (Dkt. ##13 and 19) fail to state a claim upon which relief may be granted against Defendants. Plaintiff's amended complaints also fail to state a claim upon which relief may be granted against Defendants in their official capacities for money damages. Plaintiff's request for prospective injunctive relief is moot.

## Recommendation

It is therefore recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed, without prejudice, for lack of subject matter jurisdiction.

It is further recommended that Plaintiff's First, Fifth, Sixth, Eighth, and Fourteenth Amendment claims against Defendants be dismissed, with prejudice, pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B). It is recommended that Plaintiff's request for prospective injunctive relief be dismissed as moot.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 6th day of June, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE